# E. SHERWOOD v. THE STATE.

1. SWINDLING—INSTRUCTIONS. In a trial for passing a forged or worthless check for good, and there is no evidence tending to show that the defendant obtained the check from some other party, it is not error to instruct the jury "that if the defendant got the check from another, it "devolved on him to show it," the court having instructed the jury that knowledge of the worthlessness of the draft was a material element of the offense.

2. DISCRETION OF COURT—WITNESS UNDER THE RULE. The admissibility of witnesses who have violated the rule or who have not been placed under the rule, is within the sound discretion of the court; such discretion will be presumed to have been correctly exercised until the contrary appears.

APPEAL from the Criminal District Court of Galveston county. Tried below before the Hon. Gustave Cook.

E. Sherwood was indicted for swindling, in passing off to Miss Maggie Martin a check for one hundred dollars, which check was not genuine. The indictment set out the check, and the original check and indictment formed part of the record, being sent up by order of the court.

Maggie Martin, for the State, testified, that she had license to sell liquor; she knew defendant; met him first at Bremond's saloon, and supposed him to be an honorable man. "He came to my house, and was there at intervals from Friday "till the Monday following, and contracted a debt which he "promised to pay on Monday. On Monday, in November, "1874, he came to my house again and handed me the check" (which was produced and identified by witness as the same handed her by defendant). "He said the check was good. I "asked him whose check it was, and he replied, 'Don't you "'know? he is on the strand.' I looked and thought it was "signed P. J. Willis & Bro.; believing what he said, I ac-"cepted the check in good faith in settlement of his debt; "there being a balance due him on the check over and above

"the debt, he called for more wine, and I gave him seven "bottles of wine, which were worth five dollars a bottle; the "wine was my property, and I gave it to defendant, believing "what he told me about the check to be true. I would not "have let him have the wine if he had not given me the check. "The first wine I sold him because I thought he would pay "for it. I had confidence in him as a gentleman, but he had "gotten as much as I intended him to have. I gave the draft "or check to Mr. Barr in payment of a bill of mine, and he "reported that the bank refused payment. * * * This was "in Galveston county."

Julia Tucker, for State, testified, that she knew defendant, and that he came to Miss Maggie's house about the middle of November, 1874, and purchased wine, promising to pay on Monday. "On Monday he returned and wanted more wine; "I refused to give it to him, when he told me that he had "given Miss Maggie a check for a hundred dollars, and that "he wanted the wine. Miss Maggie showed me the check "and told me to let him have the wine on it; he got seven "bottles of wine on the check" (the check was shown to and identified by the witness).

Hattie Bates testified that she was at Maggie Martin's and saw the check he gave (identifying the check); "he told me he gave it to her; know that he asked for wine on the check and got it."

The foregoing witnesses had been placed under the rule and over the objections of defendant. Geo. Sealy, who had not been placed under the rule, was called for the State, and testified: "I have seen this check before; it was presented to "the bank of Ball, Hutchins & Co., Galveston, for payment; "I examined the paper and the books of the bank, and could "find no signature answering to that of the check having an "account with Ball, Hutchins & Co. I am a member of the "firm; cannot make out the name to the check; am satisfied "no such person has an account at the bank."

(The original check was read in evidence). "Mr. Barr pre-

" sented this check to witness for payment, and I refused, be-
" cause I knew no such man."

The charge of the court is sufficiently given in the opinion.

Defendant was convicted, and his punishment fixed at two
years in the penitentiary. Judgment was rendered upon the
verdict, and defendant appealed.

*N. G. Kittrell,* for appellee.

GOULD, J. The original indictment and original check,
which last is alleged to have been improperly admitted in evi-
dence, because of its variance from that set out in the indict-
ment, have both been sent up with the record for our in-
spection. The alleged variance has not been specifically
pointed out, and a careful comparison of the two instruments
has not enabled us to detect it. The check appears to have
been correctly set out in *hæc verba,* and was properly admitted
in evidence.

It is said that the court erred in charging that if defendant
got the check from another, it devolved on him to show it.
There is nothing in the evidence tending to show that the de-
fendant innocently obtained the check from some third person.
The evidence raises no such issue. The charge instructed the
jury that knowledge on the part of defendant of the worthless-
ness of the check was a material element of the offense. We
think that the entire charge made it plain to the jury, that with-
out a fraudulent intent had been shown beyond a reasonable
doubt, the offense was not made out. It was, perhaps, unnec-
essary to give any instruction on a defense wholly unsupported
by anything in the evidence. The course of the argument
below may have called forth the instruction, which, at all
events, was not, under the evidence, erroneous.

It appears, by bill of exceptions, that at the request of defend-
ant, one of the witnesses was placed under the rule, that after they
had all been examined, being all for the State, the court allowed
the District Attorney time to send for another witness, and

allowed that witness to be introduced, he not having originally been sworn and placed under the rule, and not having been in court. There is nothing in the Code forbidding the introduction of other witnesses than those placed under the rule. On the contrary, the Code authorizes the introduction of witnesses at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice. (Paschal's Digest, Article 3046. See also Articles 3047–8–9.)

We think the admissibility of witnesses who have violated the rule, or who have not been placed under the rule, is a matter addressed to the sound discretion of the court. (1 Greenleaf, Section 432; 1 Bish. Cr. Pr., Section 518.) We must presume, until the contrary appears, that discretion to have been properly exercised. It appears that the witness had not been in court so as to hear the testimony, and it does not appear that he had heard or had any opportunity of hearing the purport of the previous testimony from any other source. There is nothing in the nature of his evidence, or in the circumstance of its admission, to justify us in holding that the discretion of the court was not properly exercised in support of the due administration of justice. The judgment is affirmed.                    Affirmed.