### TELESFORO TREVINO v. CHARLES STILLMAN.

1. DORMANT JUDGMENT—MANDATE, WHEN TO BE ISSUED.—A judgment was affirmed February 14, 1873, by the Supreme Court. On July 21, 1873, the clerk made out a mandate in the case, which was held up because of a motion for rehearing. The motion was overruled October 14, 1873, and the term at which the judgment was affirmed ended by adjournment November 28, 1873. Execution was issued in the court below October 21, 1874. On application to enjoin the execution on the ground that the judgment was dormant: *Held*—

1. From these facts, there is no presumption that a mandate was issued before the adjournment of the term of the Supreme Court at which the action was had.

2. *Prima facie*, the judgment had not lost its validity, the execution having issued within twelve months of the adjournment of the court in which the judgment of affirmance was rendered, and within twelve months from the filing of the mandate, allowing a reasonable time, after the action of the court upon the motion for rehearing, within which to file the mandate.

3. The law does not require the clerk to issue the mandate until the payment of his costs; nor, in the usual course of business, until the close of the term.

4. Until the end of the term, the judgments of this court are within its control, and liable to be set aside, even after a motion for rehearing has been overruled.

2. DORMANT JUDGMENT.—On an injunction to restrain an execution issued upon a dormant judgment, when the defendant in the injunction suit asks that his judgment be revived, it is proper that such action be taken, there being no reason against it shown.

APPEAL from Cameron.    Tried below before the Hon. Edward Dauherty.

November 24, 1874, Charles Stillman brought an injunction suit against Telesforo Treviño, administrator of the estate of Manuel Treviño Canalez, to enjoin an execution in the hands of the sheriff of Cameron county, and the judgment on which it was based, rendered at the August Term of said court, 1871, and which had been appealed to, and affirmed by, the Supreme Court at its term for 1873.   Several reasons, attacking the validity of the judgment, were alleged in the bill.   Among the alleged causes for relief, it was alleged that the judgment was dormant by reason of the non-issuance of execution ·within one year from its affirmance in the Supreme Court.   The defendant answered fully under oath, and in reconvention asked that the judgment be revived, in the event of it's being held dormant.

The dates, as appearing from the bill and answer, upon which the court acted below, are as follows: Judgment below, August, 1871; affirmed by Supreme Court, February 14, 1873; clerk made out a mandate, July 21, 1873, which was held up on account of a motion for rehearing; motion for rehearing overruled, October 14, 1873; term of Supreme Court adjourned, November 28, 1873; execution issued, October 21, 1874.   It did not appear when the mandate was filed in the District Court.

December 30, 1874, the case was heard on exceptions and answer, and the District Court rendered its judgment:

"That as to so much of the petition herein as relates to the dormancy of the judgment rendered in this court on the 10th day of August, 1874,   *   *   *   wherein Manuel Treviño Canalez recovered the sum of $3,079.31, this court considering the said judgment as dormant at the time of the issuance of the provisional injunction herein, the said injunction is hereby made perpetual.

"And as to the other matters of the complainant's petition, the same is dismissed for want of equity.   And, further, that

the plea in reconvention of the defendant herein, praying a revival of the said judgment in case it should be holden to have become dormant, the same is dismissed as beyond the jurisdiction of this court, in the manner proposed."

From this decree the defendant, Treviño, appealed.

*Powers & Maxan,* for appellant, after discussing the matters in the bill not considered in the opinion, insisted—

I. The receipt of the mandate in the District Court is to date as the judgment in that court, upon which execution may issue as in other cases; (Paschal's Dig., 1571;) and it is not alleged or shown that the mandate was filed more than one year before the issuance of the execution. From the facts in evidence, it is evident that it was not.

II. The District Court should have revived the judgment on holding that it was dormant. (Cyrus *v.* Hicks, 20 Tex., 486; North *v.* Swing, 24 Tex., 194; Fowler *v.* Burdett, 20 Tex., 37; Fitzhugh *v.* Custer, 4 Tex., 393; Bourke *v.* Vanderlip, 22 Tex., 223; Willis *v.* Gordon, 22 Tex., 243; Hopkins *v.* Howard, 12 Tex., 7; Bullock *v.* Ballew, 9 Tex., 500; Perkins *v.* Hume, 10 Tex., 50; Hagood *v.* Grimes, 24 Tex., 15; McFadden *v.* Lockhart, 7 Tex., 575; Weatherford *v.* Van Alstine, 22 Tex., 22.)

*Ballinger, Jack & Mott,* for appellee.—The application for rehearing was refused by the Supreme Court on the 14th of October, 1873; execution was issued on the 21st of October, 1874. The overruling of the motion for rehearing was the final disposition of the cause. The judgment was therefore rendered at that date, to wit, October 14, 1873; but execution did not issue until October 21, 1874. This was too late, and the judgment was dormant. (Paschal's Dig., art. 4608; Shapard *v.* Bailleul, 3 Tex., 26.)

The injunction was rightly granted.

The petition for injunction was sworn to on the 12th of November, 1874, and the fiat of the judge bears date the

19th of November, 1874. This was within a month from the issuance of the execution. The application was, therefore, made within time, and proceedings under the dormant judgment properly restrained.

We suggest, that this court will not undertake to reverse the cause and dissolve an injunction which was properly granted by the court below, for the purpose of ordering a *scire facias* to revive the judgment. The parties have their remedy by an original proceeding in the court below, (if their judgment is capable of revival,) and we respectfully submit that they be left to pursue that remedy.

Gould, Associate Justice.—Of the various grounds on which the petition claimed relief against the judgment, the only one which was held valid by the court below was that the judgment was dormant. The appellee has not sought to revise the action of the court in sustaining the demurrer to so much of the petition as set up other matters, and no question as to the correctness of this action is properly before us.

The averments of the petition, bearing on the question of the dormancy of the judgment, are, in substance, that the judgment was rendered in the District Court in August, 1871, and was, on appeal to this court, in all things, affirmed on February 24, 1873 ; but that execution did not issue thereon until October 21, 1874, which, it is claimed, was not within one year from the first day upon which an execution could by law have issued. Evidently, the petition assumes that execution could by law have issued immediately on the judgment of affirmance. The statute, however, says that the clerk shall proceed to issue execution " on the receipt of the mandate of the Supreme Court." (Paschal's Dig., art. 1571.) The petition does not show when the mandate was so received, nor does it show when it issued or should have issued; nor are any facts stated from which the date could be inferred at which execution might, in the regular course of law, have issued.

From the answer and exhibits of the defendant, which were before the court, and, as well as the petition, constituted the basis of the judgment, some additional facts appear, viz.: That on July 21, 1873, the clerk of the Supreme Court proceeded to prepare a mandate to be sent down to the District Court, which, however, was held up, as there was a motion for rehearing made by Stillman; that this motion was overruled on October 14, 1873; that the term of this court at which these proceedings were had ended, by adjournment, on November 28, 1873; and that afterwards (date not stated) the clerk of the Supreme Court forwarded the mandate prepared as aforesaid, which was received and filed in the District Court on February 12, 1874.

Our opinion is, that the facts do not show that the mandate either did issue or should have issued before the close of the term of this court at which the judgment was affirmed; nor that the date at which execution could have issued was any earlier than that at which the mandate was filed, or, at all events, that it was any earlier than a reasonable time for procuring and forwarding the mandate, after the close of the term.

Until the end of the term, the judgments of this court were within its control, and liable to be set aside, even after a motion for rehearing had been overruled. We are aware of no statute or rule of court which authorized the issuance of the mandate as a matter of right, and without a special order therefor, before the close of the term. The practice is now regulated by statute, and in accordance with the ordinary course of procedure in appellate courts; and what is believed to have been the practice in this court, as organized under the Constitution of 1845, requires an order of the court to authorize the issuance of the mandate before the close of the term. (Laws 14th Leg., 51; Phillips' Practice, 208, 218; The Bank of U. S. *v.* Swan, 3 Pet., 68.)

But even if the issuance of the mandate before the end of the term, and without a special order, was authorized by the

practice of the court at that time, (1873,) it can hardly be contended that this was anything more than a privilege of which the appellee might take advantage, if he saw fit to pay the clerk the costs adjudged against the appellant, and take the risk of a subsequent rehearing and revocation of the mandate. The clerk is not compelled to issue the mandate until the costs in this court have been paid. (Paschal's Dig., art. 1568.)

It could scarcely be that the earliest date at which this privilege could have been claimed should, by operation of law, become the date at which execution might issue, instead of the date fixed by the statute, to wit, the actual filing of the mandate. Indeed, no such position has been taken in the brief of appellant; but it is simply claimed that the overruling the motion for a rehearing was the date of the judgment, implying that it was also the date at which execution might issue. This position has not been supported by authority, and is, we think, untenable.

There is nothing in the record which shows that the execution was not issued within a year from the first day on which it could by law have issued, or that the judgment was dormant at the time when execution actually issued. The execution not only issued within a year from the filing of the mandate, but also within a year from the end of the term at which the judgment was affirmed, and, *prima facie* at least, the judgment had not lost its validity.

But even if the judgment were dormant, the defendant prayed, in the alternative, that it might be revived; and the court, having the parties before it, should have granted the relief asked for, unless there existed some legal objection to the validity of the judgment. (See cases cited by appellant; Cyrus v. Hicks, 20 Tex., 486; Bourke v. Vanderlip, 22 Tex., 223; Willis v. Gordon, Id., 243.)

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.